UNITED STATES OF AMERICA
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of NARRAGANSETT, IMPROVEMENT COMPANY, INC., | : | |
| v. | : | C.A. No. 06-155T |
| THE WHITING-TURNER CONTRACTING COMPANY, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA | : | |

**MEMORANDUM IN SUPPORT OF OBJECTION,
AND REQUEST FOR ATTORNEYS' FEES**

Defendants respectfully submit this Memorandum of Law in support of its Objection to Plaintiff's August 3, 2007 Motion to Compel.

## I. BACKGROUND FACTS

Defendant The Whiting-Turner Contracting Company ("Whiting-Turner") is the Prime Contractor on the $15 Million "Consolidated Fire, Police, and Security Building, North Gate and Gate No. 2" Project, located in Newport, Rhode Island (the "Combo Fire Project"). See Affidavit of Christopher N. Martinson at ¶¶ 3 and 5, **Exhibit A**, attached hereto. Plaintiff Narragansett Improvement Company, Inc. ("NICO") is the demolition, site work, and landscaping subcontractor to Whiting-Turner on the Combo Fire Project. See id. at ¶¶ 7-8. The Combo Fire Project is still active today, with warranty work, landscaping, and construction work (extra and base contract) still remaining. See id. at ¶ 9. NICO's contractual obligations on the Combo Fire Project remain open because: (1) the United States Navy has not yet accepted NICO's punch list work and (2) NICO is required to perform landscape maintenance at the project site until November 3, 2007. See id. at ¶ 10.

NICO's claims in this action are for payment on the Combo Fire Project and another project owned by the United States Navy[1]. In their Counterclaim, Defendants allege two breach of contract claims and one indemnification claim.

## II. THE DISCOVERY DISPUTE

NICO has targeted a broad range of documents in its document requests directed to Whiting-Turner (attached as Exhibit A to its Motion to Compel). Almost the entirety of Whiting-Turner's Combo Fire Project file is implicated by NICO's collective requests. See **Exhibit A** at ¶ 14. Although Whiting-Turner has objected to all but one of Plaintiff's requests on the grounds that they are overly broad and unduly burdensome, Whiting-Turner has nevertheless agreed to present its Combo Fire Project file for examination at its current location in Whiting-Turner's Bridgewater, New Jersey office (See Whiting-Turner's responses to NICO's Document Requests, attached as Exhibit B to NICO's Motion to Compel). Because the Combo Fire Project is still ongoing, its project file is frequently accessed by Whiting-Turner. See **Exhibit A** at ¶ 13. The project file is especially important to Whiting-Turner in assisting with the close out of the project with the United States Navy. See id. at ¶ 15. However, NICO has demanded that Whiting-Turner copy and / or transport the responsive documents to or near Providence, Rhode Island at Whiting-Turner's own great expense. The project file presently occupies an entire 10 foot by 14 foot room in Whiting-Turner's Bridgewater, New Jersey office, and consists of approximately five four-drawer file cabinets, two five-drawer file cabinets, eight banker boxes, plus approximately a roomful of drawings, binders, and other documents. See **Exhibit A** at ¶ 12.

---

[1] NICO has agreed to dismiss its claims arising from the second project, the United States Navy's "Child Development Center" project located in Newport, Rhode Island.

The parties had limited discussions regarding Plaintiff's Motion to Compel prior to its filing. In response to NICO's counsel's July 11, 2007 letter (attached to Plaintiff's Motion to Compel as Exhibit C) demanding that the documents be produced in or near Providence, Rhode Island, Whiting-Turner's counsel responded in a July 20, 2007 letter (attached to Plaintiff's Motion to Compel as Exhibit D) by offering two alternatives to a presentation in Whiting-Turner's Bridgewater, New Jersey office: (1) NICO could pay for the copying and transportation of the portions of the Combo Fire Project file that were implicated by its document requests (nearly all of the file was implicated), or (2) NICO could narrow its broad requests to identify specific documents or more precise categories. Upon receipt of this letter, counsel for NICO telephoned counsel for Whiting-Turner and asked for an estimate for the copying and transportation of the documents. See Affidavit of Michael D. Williams at ¶ 2, **Exhibit B**, attached hereto. After receiving an initial estimate, counsel for Whiting-Turner telephoned counsel for NICO and informed him that the "conservative" estimate for the copying and transport of the portion of the Project file implicated by NICO's requests was between $10,000 and $14,000, to which counsel for NICO responded that some one from his office "might be headed down to New Jersey."[2] See id. at ¶¶ 3 and 4. Approximately one week after the conclusion of that conversation, which left Whiting-Turner's counsel with the impression that NICO was contemplating sending one of its attorneys to New Jersey to inspect the project file, NICO filed its Motion to Compel without any warning or further discussion. See id. at ¶ 5. Because of the abrupt filing of the Motion to Compel, Whiting-Turner did not have the opportunity to draft its own Motion for Protective Order. See id. at ¶ 7.

[2] These were the extent of the telephone conversations among counsel regarding NICO's potential Motion to Compel – Plaintiff misrepresents in its motion that it attempted to call Whiting-Turner's counsel "numerous times." See **Exhibit B** at ¶ 6.

## III. ARGUMENT

Plaintiff's Motion to Compel should be denied by this Honorable Court. Several grounds exist for the denial of NICO's Motion to Compel: (1) NICO's requests are overly broad and unduly burdensome on their face, (2) the transportation and / or copying of the voluminous documents requested by NICO would pose an extreme prejudice to Defendant Whiting-Turner, (3) the Combo Fire Project is still active and therefore Whiting-Turner's project file is also still in use, and (4) NICO failed to confer in good faith with Whiting-Turner about the filing of its Motion to Compel, as contemplated by Fed. R. Civ. P. 37(a).

### a. The Requests that form the basis of NICO's Motion to Compel are overly broad and unduly burdensome.

Considering the large size of the Combo Fire Project, the document requests associated with NICO's Motion to Compel are overly broad and unduly burdensome. See **Exhibit A** at ¶ 5. To request "all correspondence" with the Navy and with the subcontractors, "all" requests for information, "all" change orders, "all" internal memoranda, "all" notes, "all" applications for payment "in relation to" NICO (this implicates all applications for payment for all other subcontractors that performed work "related to" NICO's), "all" timing documents, and "any writing" between Whiting-Turner and the project architect, engineers, consultants, "or any other person from an entity concerning or affecting the Project" is to implicate nearly the entire Combo Project file, identifying an overwhelming amount of documents. NICO also fails to state any limiting timeframes in its requests. The Combo Fire Project encompasses several buildings, private roadways / parking lots, and landscaped areas See id. at ¶ 5. Whiting-Turner has had written communications with the United States Navy and the Combo Fire Project's subcontractors thousands of times. See id. at ¶ 6. Because NICO's claims are only for an alleged lack of payment from Whiting-Turner, and therefore call upon only a limited amount of

Combo Fire Project documents, the scope of its requests, as described above, is profoundly inappropriate and overbroad. NICO could prosecute its claims with requests that are much more specific and narrow, and Whiting-Turner respectfully requests that this Court instructs NICO to do so in its denial of NICO's Motion.

**b. The Combo Fire Project file should be produced where it is maintained, in order to avoid unfair prejudice to Whiting-Turner.**

Traditionally, business records are produced where they are maintained when they are voluminous and their transportation materially prejudices their owner. "Generally, inspection is required when the requested material is so voluminous that copying and transporting it would prove unduly burdensome and oppressive, or where the distance between the parties is great." Compagnie Des Bauxites De Guinea v. Insurance Company of North America, 651 F.2d 877, 883 (3rd Cir. 1981), citing Continentale D'Importation v. Pacific Argentine Brazil Line, 1 F.R.D. 388, 389 (S.D.N.Y. 1940); Niagara Duplicator Co., Inc. v. Shackleford, 160 F.2d 25 (D.C. Cir. 1947); Lundberg v. Welles, 93 F.Supp. 359 (S.D.N.Y. 1950); and Harris v. Sunset Oil Co., 2 F.R.D. 93 (W.D. Wa. 1941). "Business records should usually be examined at the place where they are kept." Corporate Property Investors v. County of Ramsey, 1996 WL 207403 at *2 (Minn. Tax 1996), citing 8 C. Wright, A. Miller and R. Marcus, Federal Practice & Procedure § 2214 at 441-43. "Where records of business are to be examined for discovery, ordinarily they should not be required to be delivered to the adversary, but to be made available for inspection, etc., at the owners' place of business, during reasonable business hours, unless the parties mutually agree to some other place and time." Cooper v. Fulton, 117 So.2d 33, 36 (Fla. Dis. Ct. 1960), citing Niagara Duplicator; Harris; and Cartwright v. Greenpoint Basin & Constr. Co., 2 F.R.D. 338 (E.D. N.Y. 1942).

As stated above, Whiting-Turner received an estimate stating that the copy and transportation costs of the portions of the Combo Fire Project file implicated by NICO's requests would amount to between $10,000 and $14,000. See **Exhibit A** at ¶ 16. Whiting-Turner will be severely prejudiced if it incurs these costs. Instead, as the requesting party, NICO should be responsible for any fees arising from the documents produced. "Rule 34 allows for the plaintiff to 'inspect and copy' relevant documents and does not require a responding party to pay for copying costs of voluminous materials." Obiajulu v. City of Rochester, 166 F.R.D. 293, 297 (W.D.N.Y. 1996), citing Lenard v. Greenville Municipal School Dist., 75 F.R.D. 448, 451 (N.D.Miss. 1977). Whiting-Turner stands willing to work with NICO to reduce the costs associated with the document production. Also, the transportation of the file to Rhode Island could potentially disrupt the file's physical organization, thereby preventing it from being authentically presented "as maintained in the usual course of business."

In Schering Corp. v. Thornton, a 1973 Florida state case, the court found that the plaintiff's proposal of producing a large business file at the site that it was maintained, or charging the defendant to photocopy the file, was reasonable when the copying costs were estimated to exceed $4,000. 280 So.2d 493, 494 (Fla. Dist. Ct. App. 1973) ("there are occasions when compliance would require such an expenditure of time, money, and effort that it clearly would be unreasonable and unduly oppressive to expect the complying part to bear the burden of such."). In Fairwater v. Chris-Craft Corp., the Southern District of New York held that if the parties could not resolve a discovery dispute, certain requested business records would be produced where they were stored in Michigan, rather than in New York where the action lied. 1 F.R.D. 509, 510 (S.D.N.Y. 1940). In Lundberg, the Southern District of New York held that important business records were to be produced in California, and not moved to New York,

where the action lied. 93 F.Supp. at 363 ("I believe that it would be needlessly oppressive were defendant compelled to transport voluminous records from California for inspection here"). The court in Societe Internatoinale Pour Participatons Industrielles Et Commerciales v. Clark held that documents stored in Switzerland were to be produced for inspection there, and not in the United States. 9 F.R.D. 263, 266 (D.D.C. 1949). All of these cases involve transport distances greater than the one at issue in the instant action, and therefore all of them posed a more difficult burden to the requesting party to review the documents where they were maintained. Regardless of the increased burden to the requesting parties, the courts in the above cases would not compel the owners of voluminous business records to produce them in another jurisdiction. Defendants strongly urge this Honorable Court to hold in the same manner as to NICO's Motion to Compel.

Arguably the most persuasive of the many cases on-point with this dispute is Mid-America Facilities, Inc. v. Argonaut Insur. Co., 78 F.R.D. 497 (E.D.Wi. 1978). The Mid-America court held that when defendant's business records were located in California, and plaintiff wanted them produced in Wisconsin, the substantial volume of the documents made it "not unreasonable to require the plaintiff to examine the records in the place where [they] are located." Id. at 498. Further, the Mid-America court factored into its determination that plaintiffs had willingly chosen the Eastern District of Wisconsin as the venue for the law suit, as opposed to a court in California near where defendant was based, and therefore discounted any alleged burden that the plaintiff presented due to that choice of venue. Id. at 498. The Mid-America court concluded by stating that "unless plaintiffs can show that the burden imposed on them in going to California will substantially outweigh the burden on the defendant in bringing the documents to Milwaukee, defendant will have sufficiently complied with Rule 34 if it makes the documents available in California." Id. at 499. Here, NICO has made no such demonstration

of burden, and has instead exclusively relied upon the initial estimate obtained by Whiting-Turner. Further, it was NICO that selected the District of Rhode Island as the venue for this action, and that selection should therefore act as a mitigating factor against any alleged burden that NICO articulates.

Considering the size of the Project file and the overwhelming expense in copying and transporting it, the most prudent course of action for NICO would be to send its counsel to New Jersey to review the project file as it is maintained in its natural state, and flag relevant documents for copying. Whiting-Turner should not be held financially responsible for producing the Combo Fire Project file away from where it is presently maintained, especially since NICO chose Rhode Island as the venue for its Complaint[3].

**c. The Combo Fire Project file cannot be removed from Whiting-Turner's Bridgewater, New Jersey office until the project is closed out.**

Aside from its size, the Combo Fire Project file is still actively used by Whiting-Turner, and the removal of it will disrupt Whiting-Turner's ability to close out the Combo Fire Project in a timely and efficient manner. See **Exhibit A** at ¶ 13 and 15. Whiting-Turner requires access to the Project file on an almost daily basis, and needs to maintain regular access until the project has been closed out. See id. at ¶¶ 13 and 15. The removal of the Combo Fire Project file prior to project closeout would unfairly prejudice Whiting-Turner and many other project participants, including the owner. See id. at ¶ 15. "Books of account should not be impounded and their owner deprived of their use and control. A court cannot require a party to move his books, papers, and documents from the place where they are ordinarily kept to some other place to make

[3] Further, the Whiting-Turner / NICO contract provides that Maryland is the preferred venue for any litigation between the parties. See **Exhibit C** at Article 9(t), attached hereto (Whiting-Turner's principal office is located in Baltimore, Maryland).

it convenient to inspect them." Cooper, 117 So.2d at 36, quoting 27 C.J.S. Discovery § 82, p. 264.

**d. NICO failed to confer in good faith with Whiting-Turner prior to filing its Motion to Compel.**

Finally, NICO failed to satisfy its obligation to confer with Whiting-Turner in good faith, as contemplated by Fed. R. Civ. P. 37(a)(2)(A), as it failed to give Whiting-Turner reasonable warning that it was going to file its Motion to Compel. During the telephone conversation in which NICO's counsel was informed of the document copy and transportation estimate by Whiting-Turner's counsel, NICO's counsel suggested that the copying and transportation estimate was probably too high, and implied that he might have to travel to New Jersey to review the file in person. See **Exhibit B** at ¶ 4. After that telephone conversation, NICO filed its Motion to Compel without further notice or warning. See id. at ¶ 5. Because NICO failed to confer in good faith prior to the filing of its Motion to Compel, its Motion should be denied by this Honorable Court.

## IV. CONCLUSION AND REQUEST FOR ATTORNEYS' FEES

NICO's Motion to Compel should be denied for the above-presented grounds. Regardless of NICO's Motion, Defendants still stand prepared to reach a compromise with NICO as to its requests. However, Whiting-Turner strongly opposes the removal of the Combo Fire Project file from its possession, particularly prior to closeout, and also strongly opposes its assumption of the cost of the copying and transportation of the implicated documents.

Because NICO failed to confer in good faith with Whiting-Turner prior to the filing of its Motion to Compel, and because its Motion lacks merit, Whiting-Turner hereby requests the award of the attorneys fees that it reasonably incurred in defending NICO's Motion, as provided for under Fed. R. Civ. P. 37(4)(B).

Respectfully submitted,

THE WHITING-TURNER CONTRACTING
COMPANY, ST. PAUL FIRE AND MARINE
INSURANCE COMPANY, and
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,
By their attorneys,

/s/ Michael D. Williams

Christopher C. Whitney (#3261)
cwhitney@lmkbw.com
Michael D. Williams (#6702)
mwilliams@lmkbw.com
Little Medeiros Kinder
Bulman & Whitney, P.C.
72 Pine Street
Providence, RI 02903
T: (401) 272-8080
F: (401) 521-3555

Dated: August 17, 2007

**CERTIFICATION**

I hereby certify that on the 17th day of August, 2007, I caused a copy of this to be sent to the attention of Girard R. Visconti, Esq.

/s/ Michael D. Williams

f:\mdw\st. paul\whiting - turner\nic action\memo in support of objection to motion to compel (2).doc